United States District Court<br>For the Northern District of California

1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

**SAN JOSE DIVISION**

10
11

| | |
|---|---|
| ANH HUNG HUYNH, | Case No. C 12-01574-PSG |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| SAFECO INSURANCE COMPANY OF AMERICA, a corporation, and DOES 1 to 25, | **(Re: Docket No. 19)** |
| Defendants. | |

19    This insurance coverage action arises out of a dispute regarding the enforceability of a policy

20  exclusion for loss resulting from "the illegal growing of plants" and "the illegal manufacture,

21  production, operation or processing of . . . plant materials."  Defendant Safeco Insurance Company

22  of America ("Safeco") relied upon the exclusion in denying benefits to Plaintiff Anh Hung Huynh

23  ("Huynh") for damages to his residential rental property that were caused by a tenant's illegal

24  marijuana grow operation.  Huynh contends that the exclusion is unenforceable and thus that

25  Safeco's denial of benefits breached the insurance contract and the implied covenant of good faith

26  and fair dealing.  Safeco seeks partial summary judgment.[1]  Huynh has not filed an opposition to

---

[1] Safeco does not seek summary judgment as to the entire complaint because Huynh's discovery responses suggest that he may be asserting damages based upon loss that was not caused by the marijuana grow operation.

United States District Court
For the Northern District of California

1  Safeco's motion.

2                          **I.      BACKGROUND**

3         Because Huynh failed to oppose the motion, the background facts recited herein are drawn

4  entirely from evidence presented by Safeco.  Safeco issued a Landlord Protection insurance policy

5  to Huynh for the policy period October 22, 2011 to October 22, 2012.[2]  The policy pertained to a

6  residence located at 3665 Ivy Canyon Court, San Jose, California 95121 ("the property").[3]  Huynh

7  leased the property to Cuong Manh Bui for one year commencing December 2011.[4]

8         On December 24, 2011, the San Jose Police Department received a report that the driver of a

9  Toyota Camry was striking a passenger and that the passenger was trying to escape.[5]  Responding

10 officers found the Toyota Camry parked in the driveway of the property.[6]  After forcing entry by

11 breaking a rear patio sliding glass door, the officers found Bui and another individual in the house,

12 as well as marijuana plants and cultivation equipment.[7]  Bui and the other individual were arrested

13 and charged with violations of California Health & Safety Code §§ 11358 (cultivation of marijuana)

14 and 11359 (possession of marijuana for sale).[8]

15        On January 6, 2012, Huynh telephoned Safeco to report that he had discovered damage to

16 the property.[9]  A Safeco property loss specialist, Tracy Hendrickson ("Hendrickson"), followed up

17 with Huynh by telephone on January 9, 2012.[10]  Huynh stated that he had gone to the property on

---

19  [2] *See* Docket No. 23 ¶ 2.

20  [3] *See id*.

21  [4] *See id.* Ex. D.

22  [5] Docket No. 24 at SJPD 022.

23  [6] *See id*.

24  [7] *See id.* at SJPD 022, 051.

25  [8] *See id.* at SJPD 052; Docket No. 20 Exs. A, B.  Safeco's request for judicial notice is hereby
26  granted.

27  [9] *See* Docket No. 23 ¶ 3.

28  [10] *See id.* ¶ 4.

                                              2

**United States District Court**
For the Northern District of California

1    January 5, 2012 to collect the rent, and had discovered a broken sliding glass door and damage

2    inside the house.[11]  Specifically, Huynh described holes in the wall, debris, water running from the

3    water heater, and the kitchen being "messed up."[12]  Huynh indicated that he had reported the

4    damage to the police.[13]  Hendrickson sent Huynh a letter dated January 9, 2012, acknowledging

5    Huynh's claim under the policy.[14]

6           On January 10, 2012, Huynh sent Hendrickson a copy of his lease agreement with Bui.[15]

7    Also on that date, Huynh met a Safeco adjuster, John Barch ("Barch"), at the property.[16]  Barch

8    walked the entire property with Huynh, making notes and taking photographs of damage.[17]  Barch

9    determined that although some damage had been caused by the officers' forced entry, the majority

10   of the damage resulted from the marijuana grow operation.[18]  Barch attributed to the officers' entry

11   the damage to the rear sliding glass door and window, to the left side gate, and to the left side garage

12   door.[19]  He attributed to the grow operation the damage to the property's electrical system, holes in

13   the drywall, the erection of a wall enclosing the dining room, and the installation of shelves, grow

14   light support wires, and floor tarps.[20]  Barch prepared a loss report setting forth these

15   determinations.[21]

16   _____

17   [11] *See id.*

18   [12] *See id.* Ex. B.

19   [13] *See id.*

20   [14] *See id.* ¶ 5.

21   [15] *See id.* ¶ 6.

22   [16] *See* Docket No. 22 ¶¶ 1-2, 5.

23   [17] *See id.* ¶ 6.

24   [18] *See id.*

25   [19] *See id.* ¶ 7.

26   [20] *See id.*

27   [21] *See id.* Ex. A.

28

3

On January 19, 2012, Hendrickson telephoned Huynh to let him know that his insurance claim would be denied in part based upon Exclusion 16 in the General Exclusions section of the policy.[22]  The General Exclusions section lists seventeen categories of loss that are excluded from coverage under the policy.[23]  Exclusion 16 reads in its entirety as follows:

> **16.    Illegal Manufacturing, Production or Operation**, meaning loss from:
>
> a.    the illegal growing of plants or the illegal raising or keeping of animals; or
>
> b.    resulting from the illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials.
>
> Such loss is excluded whether by vandalism or any other cause and whether or not within the knowledge or control of an ***insured***.[24]

On January 30, 2012, Hendrickson sent Huynh a letter distinguishing between (1) damages to the property resulting from the illegal growing of marijuana and (2) damages to the property resulting from the police raiding the home.[25]  Hendrickson explained in the letter that loss caused by the growing of marijuana is excluded from coverage, but stated that loss caused by the police raid is covered, and indicated that a check for that loss would be mailed under separate cover.[26] Hendrickson invited Huynh to provide Safeco with any additional information in his possession that might affect the coverage determination, and informed him of his right to seek review of the coverage determination by the California Department of Insurance.[27]

On February 1, 2012, Huynh's counsel sent Safeco a letter disputing its coverage determination.[28]  It appears that this letter and Safeco's January 30 letter crossed in the mail, as

---

[22] *See* Docket No. 23 ¶ 7.

[23] *See id.* Ex. A at POL 32.

[24] *See id.* (bold and italics in original).

[25] *See id.* ¶ 8 and Ex. E.

[26] *See id.*

[27] *See id.*

[28] *See id.* ¶ 9 and Ex. F.

4

counsel referred only to Safeco's verbal denial of Huynh's claim.[29]   Counsel demanded that Safeco provide a full written explanation of the denial.[30]   Counsel also asserted that to the extent that the denial was based upon Exclusion 16, the provision is invalid.[31]   Counsel also stated that "California is one of the few states that allow the growing of various plants as legal under the Health & Safety Code Section 11362.765."[32]

Huynh's counsel sent another letter to Safeco on February 6, 2012.[33]   That letter responded expressly to Safeco's January 30 letter denying coverage, asserting that Exclusion 16 is invalid because:  it is not conspicuous, plain, and clear; the California Supreme Court rejected a similar exclusion in *Safeco v. Robert S.*; and California permits the growing of "various plants" under California Health & Safety Code § 11362.765.[34]

Before receiving the February 6 letter, Hendrickson wrote to Huynh's counsel on February 9, 2012, acknowledging receipt of his February 1 letter and stating that Safeco was "looking into" the concerns raised therein.[35]   Hendrickson subsequently wrote again on February 29, 2012, affirming Safeco's partial denial of Huynh's claim with respect to damages related to the marijuana grow operation.[36]   Hendrickson asked that Safeco be permitted to reinspect the property in the event that Huynh believed that Safeco had overlooked any damages unrelated to the grow operation.[37]

Huynh filed the present lawsuit in the Santa Clara County Superior Court on February 22,

---

[29] *See id.*

[30] *See id.*

[31] *See id.*

[32] *See id.*

[33] *See id.* ¶ 10 and Ex. G.

[34] *See id.* Ex. G.

[35] *See id.* Ex. H.

[36] *See id.* Ex. I.

[37] *See id.*

Case No. C 12-01574-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2012.[38]  He asserts a claim for breach of the insurance contract, alleging that Safeco has refused to pay all benefits owing under the policy, and specifically that Safeco improperly relied upon Exclusion 16 because that exclusion is invalid.[39]  He also asserts a claim for breach of the implied covenant of good faith and fair dealing, alleging that Safeco knew or should have known that Huynh is entitled to policy benefits.[40]  Safeco removed the action to this court on March 29, 2012 on the basis of diversity of citizenship.[41]

On August 2, 2012, Hendrickson wrote to Huynh, acknowledging that Safeco had not yet issued Huynh a check in the amount of $211.01 for damages to his gate caused by the officers' entry, and advising that the check was being sent under separate cover.[42]  Hendrickson noted that the policy provided that coverage was not to exceed the amount necessary for repair or replacement, and requested the status of repairs with respect to damages caused by the police raid.[43]

Hendrickson wrote again on September 7, 2012, stating that Huynh's discovery responses referenced several new items of damage that had not been disclosed previously.[44]  Hendrickson requested additional information as to certain items.[45]  It is not clear from the record whether Huynh responded to that request.

## II.    LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46]  The moving party bears

---

[38] *See* Docket No. 1.

[39] *See id.*

[40] *See id.*

[41] *See id.*

[42] *See* Docket No. 23, Ex. K.

[43] *See id.*

[44] *See id.* Ex. L.

[45] *See id.*

[46] Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Case No. C 12-01574-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  the initial burden of informing the Court of the basis for the motion and identifying the portions

2  of "depositions, documents, electronically stored information, affidavits or declarations, stipulations

3  (including those made for purposes of the motion only), admissions, interrogatory answers, or other

4  materials" that demonstrate the absence of a triable issue of material fact.[47]  If the moving party

5  meets this initial burden, the burden shifts to the non-moving party to present specific facts showing

6  that there is a genuine issue for trial.[48]  A genuine issue for trial exists if the non-moving party

7  presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to

8  that party, could resolve the material issue in his or her favor.[49]

9  ### III.   DISCUSSION

10  The primary issue presented by the motion is whether Safeco properly denied Huynh's claim

11  for loss attributable to the marijuana grow operation.  As noted above, Huynh has asserted in letters

12  to Safeco and in his pleading that Exclusion 16 is unenforceable because:  (a) the exclusion is not

13  conspicuous, plain, and clear; (b) the California Supreme Court rejected a similar exclusion in

14  *Safeco v. Robert S.*; and (c) California permits the growing of "various plants" under Health &

15  Safety Code § 11362.765.

16  **A.   Conspicuous, Plain, and Clear**

17  "[T]to be enforceable, any provision that takes away or limits coverage reasonably expected

18  by an insured must be conspicuous, plain and clear."[50]  "Thus, any such limitation must be placed

19  and printed so that it will attract the reader's attention."[51]  Such a provision also must be stated

20  precisely and understandably, in words that are part of the working vocabulary of the average

---

[47] *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[48] *See Celotex*, 477 U.S. at 324.

[49] *See Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

[50] *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1209 (2004) (internal quotation marks and citation omitted).

[51] *Id.*

7

layperson."[52]

Safeco submits the policy, which is divided into separate sections that are set off by capitalized, bolded headings bordered by lines top and bottom.[53]  The first section, "COVERAGES," describes the types of property that are insured, including the dwelling, other structures, personal property, and loss of rent.[54]  The second section, "DEDUCTIBLE," provides that a deductible applies to certain coverages but not to others (for example, the deductible does not apply to loss of rent or fire department service charges).[55]  The third section, "PERILS INSURED AGAINST," states that:

> We insure for accidental direct physical loss to the property described in Coverages A and B except:
>
> 1.      losses excluded under **General Exclusions**; [56]
>
>                                                                      . . .

The following section, "GENERAL EXCLUSIONS,"[57] states that:

> We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

This language is followed by a list of seventeen categories of loss that are excluded from coverage under the policy.[58]  The seventeen categories are numbered and set off with bold captions.[59]  As set forth above, Exclusion 16 excludes loss resulting from "a. the illegal growing of plants . . . or b.

---

[52] *Id.*

[53] Docket No. 23 Ex. A at POL 23.

[54] *Id.* at POL 23-28.

[55] *Id.* at POL 28.

[56] *Id.* (bold in original).

[57] *Id.* at POL30.

[58] *See id.* at POL 30-32.

[59] *See id.*

Case No. C 12-01574-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   resulting from the illegal manufacture, production, operation or processing of . . . plant materials."[60]

2         The court concludes as a matter of law that any reasonable insured who read this policy

3   would understand that it excludes coverage for loss arising out of an illegal marijuana grow

4   operation.  The policy is laid out in a straightforward fashion, and the General Exclusions provision

5   is set forth prominently.  Exclusion 16, at issue here, is quite short, and is drafted in plain language;

6   no specialized terminology is used.

7   **B.      *Safeco Ins. Co. v. Robert S.***

8         Huynh apparently believes that Exclusion 16 nonetheless is invalid under the holding of

9   *Safeco Ins. Co. v. Robert S.*, 26 Cal.4th 758 (2001).  In that case a sixteen year old boy, Kelly, and

10  some of his friends found a .22 caliber Baretta handgun in Kelly's home.[61]  Kelly had learned from

11  his father how to handle a 9 millimeter Baretta.[62]  He followed the same procedure with the .22

12  caliber Baretta, removing the clip from the handle, placing it on the table, and pulling back the slide

13  of the gun.[63]  He thought the gun was unloaded when he pulled the trigger; the gun fired, killing his

14  friend Christopher.[64]  A juvenile court determined that Kelly had committed involuntary

15  manslaughter, made Kelly a ward of the court, and placed him on probation.[65]  Christopher's parents

16  brought a wrongful death action against Kelly and his parents, who tendered defense of the action to

17  Safeco under a homeowners insurance policy.[66]  Safeco defended under a reservation of rights and

18  sought a judicial declaration that it did not have a duty to defend because the policy excluded

19  coverage for bodily injury arising out of an "illegal act."[67]

20  _____

21  [60] *Id*. at POL 32.

22  [61] *See id*.

23  [62] *See id*.

24  [63] *See id*.

25  [64] *See id*.

26  [65] *See id*.

27  [66] *See id*.

28  [67] *See id*.

9

Case No. C 12-01574-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

The California Supreme Court held that the phrase "illegal act" was ambiguous in the context of the policy, because it could refer to a criminal act – that is, an act that violated criminal law – or to an act that violated *any* law, whether criminal or civil.[68]  The Court concluded that Safeco had not indicated in the policy language that it wished to exclude coverage for loss arising out of *criminal* acts, despite that fact that Safeco easily could have done so given that "[i]nsurers commonly insert an exclusion for criminal acts in their liability policies."[69]  As a result, the Court concluded that the phrase "illegal act" referred to an act that violated any law, criminal or civil.[70]  As so defined, an "illegal act" could be a negligent act, because the law "holds individuals responsible for the failure to exercise ordinary care resulting in injury to another."[71]  However, the policy insured against "accidents" and "the term 'accident' is more comprehensive than the term 'negligence' and thus includes negligence."[72]  Thus negligent acts could be both covered and excluded.[73]  The Court concluded that "because the illegal act exclusion cannot reasonably be given meaning under established rules of construction of a contract, it must be rejected as invalid."[74]

*Robert S.* is distinguishable from the present case, in which the policy exclusion at issue does not bar coverage for loss arising from "illegal acts" generally, but rather for loss arising out of "the illegal growing of plants."  Unlike the insureds in *Robert S.*, who bargained for and reasonably expected coverage for loss arising out of accidents caused by negligence, the record contains no suggestion that Huynh bargained for and reasonably expected coverage for loss arising out of an

---

[68] *See id.* at 763.

[69] *Id.*

[70] *See id.* at 764.

[71] *Id.*

[72] *Id.* at 765.

[73] *See id.*

[74] *Id.* at 766.

Case No. C 12-01574-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   illegal marijuana grow operation.  The rationale of *Robert S.* simply does not apply to the facts of

2   this case.

3   **C.      California Health & Safety Code § 11362.765**

4          California Health & Safety Code § 11362.765 provides that certain individuals, such as

5   qualified patients who use marijuana for medical purposes and their caregivers, are not subject to

6   criminal liability for possession or transportation of marijuana.[75]  This section does not appear to

7   have any application here.  There is no suggestion in the record that Huynh's tenant, Bui, falls

8   within the scope of § 11362.765.  To the contrary, Bui and the other individual arrested at the

9   property were charged with violations of California Health & Safety Code §§ 11358 (cultivation of

10  marijuana) and 11359 (possession of marijuana for sale).[76]  Accordingly, the grow operation at the

11  property clearly was illegal under a plain reading of that term.

12  **D.      Claim for Breach of Contract**

13         Safeco has met its initial burden of establishing that it reasonably denied Huynh's claim with

14  respect to loss caused by the illegal marijuana grow operation.  Coverage for such loss is excluded

15  under the express terms of the policy.  Safeco has demonstrated that Huynh's challenges to the

16  policy exclusion are without merit.  Huynh has not come forward with evidence sufficient to create

17  a triable issue of material fact as to the application of Exclusion 16.  Accordingly, Safeco is entitled

18  to summary judgment as to Huynh's contract claim to the extent that the claim is based upon

19  Safeco's refusal to cover loss arising from the grow operation.

20         During discovery, Huynh produced a contractor's proposal identifying the property damage

21  that is the subject of his claim.[77]  Safeco served Huynh with requests for admissions asking him to

22  admit that numerous line items of the proposal relate to property damage caused by the marijuana

23  grow operation.[78]  Huynh failed to respond within thirty days.[79]  Thus he is deemed to have

24

25  [75] *See* Cal. Health & Safety Code § 11362.765.

26  [76] *See* Docket No. 20 Exs. A, B.

27  [77] *See* Docket No. 21 ¶ 2 and Ex. A at PLT 0007.

28  [78] *See id.* ¶ 2 and Ex. A.

11

United States District Court

For the Northern District of California

1  admitted the requests, that is, to have admitted that the specified line items of his contractor's

2  proposal relate to property damage caused by the grow operation.[80]  Huynh did respond to the

3  requests for admission late, on September 21, 2012.[81]  The late response was accompanied by a

4  letter from Huynh's counsel suggesting that a timely response inadvertently had been delivered to

5  the wrong address.[82]  Safeco responded by letter requesting a copy of the proof of service and

6  returned envelope showing the earlier service date and service address.[83]  Huynh's counsel did not

7  respond to Safeco's request.[84]  Accordingly, the specified line items are expressly incorporated into

8  the court's grant of summary judgment with respect to the contract claim.

9  **E.      Claim for Breach of the Implied Covenant**

10          "The covenant of good faith and fair dealing is implied in law to assure that a contracting

11  party 'refrain[s] from doing anything to injure the right of the other to receive the benefits of the

12  agreement.'"[85]  As a result, "a bad faith claim cannot be maintained unless policy benefits are

13  due."[86]  Because Safeco has established that it properly denied coverage as to that portion of

14  Huynh's claim arising from the marijuana grow operation, Safeco is entitled to summary judgment

15  as to Huynh's bad faith claim arising out of Safeco's denial of such coverage.[87]

16  _____

17  [79] *See id.* ¶ 2.

18  [80] *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the
19  party to whom the request is directed serves on the requesting party a written answer or objection
   addressed to the matter and signed by the party or its attorney.")

20  [81] *See* Docket No. 21 ¶ 3.

21  [82] *See id.* ¶ 4 and Ex. C.

22  [83] *See id.* ¶ 5 and Ex. D.

23  [84] *See id.* ¶ 6.

24  [85] *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1190) (quoting *Egan v. Mutual of Omaha
25  Ins. Co.*, 24 Cal.3d 809, 818 (1979)).

26  [86] *Id.*

27  [87] In fact, it appears that Safeco's conduct in adjusting Huynh's claim was exemplary.  Safeco
   inspected the property four days after Huynh's initial telephone call; Hendrickson telephoned
28  Huynh with the coverage determination nine days after the inspection; and  Hendrickson provided a

12

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### IV.    CONCLUSION

Safeco has demonstrated that it is entitled to partial summary judgment with respect to both of Huynh's claims, to the extent that those claims are based upon Safeco's refusal to cover loss arising from the marijuana grow operation.

**IT IS SO ORDERED.**

Dated:   11/21/2012

_____
PAUL S. GREWAL
United States Magistrate Judge

written coverage determination less than a month after Huynh first discovered the damage to his property.  Safeco considered and responded to Huynh's challenges to the partial denial of his claim, and it consistently invited Huynh to provide any additional information he might have that could affect the claim determination.  It appears that all of Safeco's communications were prompt and civil.  Short of ignoring the applicable policy exclusion, it is unclear what more Safeco could have done on Huynh's behalf.

13

Case No. C 12-01574-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT